## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VICTOR L. JORDAN,                    :
  plaintiff,                        :
                          :
    v.                              :
                          : CASE NO. 3:21-cv-255 (AVC)
ANGEL QUIROS, ET AL.,                :
  defendants.                       :

### RULING AND ORDER

The plaintiff, Victor L. Jordan, files this case pro se pursuant to 42 U.S.C. § 1983.  He names thirteen defendants, commissioners of correction Angel Quiros, warden Denise Walker, deputy warden Carlos Nunez, deputy warden Jennifer Peterson, unit manager captain Watson, lieutenant Gray, "Mental Health Dr." Cruz, building inspectors Jane and John Doe, state fire marshals Jane and John Doe and fire protection sprinkler system board chairmen Jane and John Doe.  Jordan alleges that the defendants subjected him to conditions of confinement that violated his Eighth, Fourteenth, and Thirteenth Amendment rights.  He seeks damages as well as injunctive and declaratory relief.

### FACTS

The complaint reveals the following facts.[1]

---

[1] The court also notes any underlying procedural facts from the relevant court

Jordan has been incarcerated since 2008 and is serving an 81-year sentence for multiple offenses.  This action concerns his confinement at Cheshire Correctional Institution ("Cheshire").

On October 14, 2020, correctional officers transported Jordan from Northern Correctional Institution ("Northern") to an outside medical appointment and returned him from the appointment to Cheshire.  When he questioned the transporting officers, they told him that he had been transferred and they did not know why.

Jordan feared for his safety because he had informed correctional and mental health officials that he feared returning to general population.  This fear resulted from an incident occurring in May 2019, following which Jordan filed a PREA complaint and tried to have correctional staff criminally prosecuted.  That incident is the subject of another lawsuit.

As he entered Cheshire, Jordan asked to be returned to Northern, stated he was in fear for his safety, and threatened to act out when his handcuffs were removed.  The officers agreed that the transfer was unfair but said they could do nothing.

---

records.

Jordan stopped speaking, responding, or moving.  He recalled officers picking him up and moving him, removing his clothes, placing him in a "ferguson gown," and placing him in handcuffs, shackles, and a black box.  Jordan was placed in a cell, in restraints.  He recalls telling the nurse who checked the restraints that he had nerve damage in his right hand and wrist and that the restraints aggravated the injury.

Jordan remained on in-cell restraints for five hours and on behavior observation status for twenty-four hours.  Later that day, Jordan spoke with the defendant, Cruz, explaining his initial distress and why he reacted as he had.  He also told her that he was not suicidal and should not be on behavior observation status and in-cell restraints.  When Cruz told Jordan that he was on behavior observation status because he refused to communicate, Jordan replied that he had a First Amendment right not to speak.  Jordan disagreed with Cruz's decision to continue the behavior observation status.

Officials placed Jordan in restrictive housing unit ("RHU") cell 2, without cleaning supplies or hygiene items.  The cell lacked functioning hot water.  The walls, floor, beds, sink, and toilet were filthy with excrement, urine, and saliva.  There was mold and rust on the walls, floor, and fixtures.  There was

3

chemical agent residue on the bed.  Jordan had to use the bed to
eat and write because there was no desk and stool in the cell.
When he used the bed and touched his face, he was exposed to the
chemical agent.  The ventilation system was clogged, and the
heating system did not function properly.  Jordan was not
provided extra blankets, or his property, for the fourteen days
he was confined in that cell.

After he was removed from behavior observations status,
Jordan was given only boxers, a t-shirt and socks.  Captain
Watson and correctional staff denied his request to retrieve
long underwear and a sweatshirt from his property.  Captain
Watson also denied Jordan access to his legal materials.  On
October 15, 2020, Jordan submitted an inmate request to captain
Watson, with copies to defendants Quiros, Walker, Nunez, and
Peterson, about his legal materials.  He did not receive a
response.

Also on October 15, 2020, Jordan submitted an inmate
request to Cruz, with copies to the defendants, Quiros, Walker,
Nunez, and Peterson, about his history of PTSD.  Jordan stated
that he was in fear for his safety and paranoid that, in
retaliation for his actions in 2019, correctional staff would
place him in a cell with an inmate who would assault him.  Cruz

responded that mental health staff would continue to work with Jordan to address this issue.[2]

Jordan submitted a third inmate request on October 15, 2020. This request addressed his conditions of confinement and his placement on behavior observation status and in-cell restraints.  This request was submitted to the defendants, Walker, Nunez, and Peterson.  Jordan sent copies to governor Lamont, commissioner Quiros, director Maiga, Cruz, and unit manage Watson.  He received only one response from Cruz.

On October 30, 2020, Jordan filed a grievance alleging that Cruz had abused her authority by placing him on behavior observation status for twenty-four hours and alleging that she was conspiring with correctional staff to retaliate against him.

On November 10, 2020, Jordan filed a grievance regarding the conditions in RHU and his treatment there.  Warden Walker denied the grievance, stating that there have never been desks and stools in RHU, inmates are given cleaning supplies on Sunday, and inmates in RHU receive property in accordance with facility protocol.  On December 18, 2020, Jordan filed a grievance appeal which was denied.

---

[2] Jordan does not challenge his mental health treatment in this action.  His Eighth Amendment claim, set forth in his first cause of action, focuses on the alleged cell conditions.

On October 19, 2020, Jordan submitted a request to the mental health unit claiming that the conditions in his cell were exacerbating his mental health issues.

On October 26, 2020, Jordan submitted an inmate request to counselor Martinez seeking copies for legal documents and unfranked envelopes.  Counselor Martinez told Jordan that captain Watson denied the request for unfranked envelopes.[3]

On October 23, 2020, Jordan submitted an inmate request to warden Walker, deputy warden Nunez, and deputy warden Peterson about the conditions in RHU and the lack of sprinklers in the unit.  He sent copies to governor Lamont, commissioner Quiros, director Maiga, and OSHA.  Although no request was addressed to him, captain Watson responded on November 6, 2020, stating that there never had been any sprinklers or desks/stools in RHU, and cells are filthy if the inmates permit them to get that way.  Captain Watson also stated that inmates in the RHU are permitted property in accordance with Cheshire protocol, and he emphasized that the unit is the restrictive housing unit.  He also noted that the conditions were not inhumane, and that solitary

---

[3] Jordan alleges that he was entitled to the envelopes under Administrative Directive 10.7, section 3(M).  That section, however, merely defines unfranked privileged correspondence and notes that it is processed without cost to the inmate.  It does not state that inmates must be provided free envelopes for this purpose.  See portal.ct.gov/DOC/AD/AD-Chapter-10.

confinement is considered to be the housing of an inmate alone, as punishment. Jordan filed a grievance and grievance appeal, both of which were denied.

Captain Watson issued an informal disposition report sanctioning Jordan for sending the request to the warden and deputy wardens.  The sanctions were seven days loss of phone and seven days loss of commissary.  When Jordan refused to sign the report, he was issued a disciplinary report which stated that Jordan had failed to follow the chain of command by writing to these officials without first speaking to captain Watson. Jordan alleges that the disciplinary report was retaliatory because he did address his concerns to captain Watson both verbally and in writing.

On November 2, 2020, Jordan filed a FOIA request with OSHA, seeking inspection reports of the RHU.  He was told that OSHA does not maintain department of correction records.  On December 8, 2020, Jordan wrote to the office of the state building inspector regarding the conditions in RHU and to the state fire marshal and fire sprinkler protection board regarding the lack of sprinklers.  He has not yet received a reply to any of his letters.

**STANDARD**

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Id.  In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed.

8

Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).

## DISCUSSION

Jordan includes three claims: (1) the defendants subjected him to unconstitutional conditions of confinement in the RHU, in violation of the Eighth and Fourteenth Amendments; (2) the defendants violated his right to equal protection of the laws by confining him in harsher conditions than those found in other housing units; and (3) the defendants have subjected him to "peonage" or involuntary servitude by housing him in substandard conditions while assessing the costs of incarceration.

## I.   Conditions of Confinement

Jordan alleges that the conditions of confinement in the RHU violated his rights under the Eighth and Fourteenth Amendments.  Jordan alleges that he is currently serving an 81-year sentence.  As a sentenced prisoner, Jordan's conditions of confinement claim is considered under the Eighth, not the Fourteenth, Amendment.  See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (holding that claims of pretrial detainees are considered under the Fourteenth Amendment while claims of sentenced prisoners are considered under the Eighth Amendment).

Accordingly, any Fourteenth Amendment conditions of confinement claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Jordan identifies several allegedly unconstitutional conditions.  First, he challenges his placement on behavior observation status for twenty-four hours and placement in in-cell restraints for five hours.  Second, he argues that the RHU cells did not have sprinklers or desks and stools.  Third, he contends that his cell lacked functioning hot water, the ventilation system was clogged, and the cell was filthy with bodily waste, mold and rust and chemical agent residue.  Fourth, Jordan complains that he was not permitted access to all of his personal property.

To state an Eighth Amendment claim for unconstitutional conditions of confinement, Jordan must allege facts supporting an objective element that "the deprivation was sufficiently serious that he was denied the minimal civilized levels of life's necessities."  He must also allege facts to support the subjective element that the defendants "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety."  Washington v. Artus, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (internal

quotation marks omitted).  Jordan must allege facts showing that

the defendants knew "of and disregard[ed] an excessive risk to

inmate health or safety," that is, that they were "aware of

facts from which the inference could be drawn that a substantial

risk of serious harm exist[ed] and . . . dr[ew] that inference."

Phelps v. Kapnolas, 308 F.3d 180, 185-86 (2d Cir. 2002).

Objectively, the seriousness of a violation is determined based

on contemporary standards of decency.  See Walker, 717 F.3d at

125.

The inquiry focuses on the "severity and duration" of the

conditions, not any "resulting injury."  Darnell, 849 F.3d at 30

(citing Willey v. Kirkpatrick, 801 F.3d 51, 68 (2d Cir. 2015)).

Conditions may be considered in combination only where one

combines with another to affect one identifiable human need.

See Wilson v. Seiter, 501 U.S. 294, 304 (1991); see also

Darnell, 849 F.3d at 32 ("the conditions must be analyzed in

combination, not in isolation, at least where one alleged

deprivation has bearing on another").  Thus, the court considers

together the various conditions included in Jordan's third

category in support of his Eighth Amendment claims.

(a) Behavior Observation Status and In-cell Restraints

Jordan was placed in in-cell restraints for five hours and

11

on behavior observation status for twenty-four hours after he threatened to act out when the restraints were removed.  Jordan concedes that he made the threats, but argues that the defendants should have disregarded them because he changed tactics and became unresponsive and limp shortly after making the threats.  Jordan also alleges that he told Cruz that the restraints and status were not necessary and disagreed with her opinion that they were required.

This claim, challenging mental health treatment, is more accurately a claim for deliberate indifference to mental health needs.  To prevail on a claim for deliberate indifference to serious mental health needs, Jordan must show both that his mental health need was serious and that the defendants acted with a sufficiently culpable state of mind.  See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)).  A disagreement over appropriate treatment is not deliberate indifference.  See Wright v. Rao, 622 F. App'x 46, 47 (2d Cir. 2015) (citing Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)); Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he received adequate treatment....

12

[T]he essential test is one of medical necessity and not one of simple desirability." (internal quotation marks and citation omitted)).

For purposes of initial review, the court assumes that Jordan has serious mental health issues.  However, he alleges only that he disagreed with Cruz's determination that he required behavior observation status and a short time in in-cell restraints, in light of his threats to act out.  Cruz denied Jordan's request relating to his confinement and stated that Jordan was placed on behavior observation status because he refused to respond to questions about suicidal thoughts.  Thus, Jordan's placement is a disagreement over appropriate treatment and does not constitute deliberate indifference.  Jordan's claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Jordan also alleges that he was placed in tight handcuffs for five hours and that the handcuffs were painful because he had nerve damage in his right hand.  He cites his declaration that he complained about the tight handcuffs to lieutenant Gray and unidentified mental health staff.

To the extent that Jordan is attempting to assert a claim that the tight handcuffs constitute use of excessive force, his claim fails.  "There is a consensus among courts in this circuit

13

that tight handcuffing does not constitute excessive force
unless it causes some injury beyond temporary discomfort."
Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d
459, 468 (S.D.N.Y. 2008); see also Garcia v. Semple, No. 3:18-
cv-1226(SRU), 2019 WL 5597771, at *11 (D. Conn. Oct. 30, 2019)
(dismissing excessive force claim based on tight handcuffs where
inmate did not allege resulting permanent injury); Abdul-Rahman
v. City of New York, No. 10 Civ. 2778, 2012 WL 1077762, at *7
(E.D.N.Y. Mar. 30, 2012) (citing cases dismissing excessive
force claims where tight handcuffs caused pain or numbness).

Jordan alleges no facts suggesting that he sought medical
treatment for any injury as a result of the five-hours in in-
cell restraints. The court concludes that although Jordan states
that the tight handcuffs exacerbated his nerve damage and caused
him pain, he fails to state any permanent injury.  These facts
are insufficient to state an excessive force claim.  As this is
the only claim against lieutenant Gray, he is dismissed as a
defendant in this case.

(b) Sprinklers

Jordan alleges that the RHU cells were not equipped with
sprinklers.  While prison officials have a duty to ensure that
inmates are reasonably safe, they are deliberately indifferent

14

only where they know of and disregard an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 838 (1994) (explaining that the Eighth Amendment forbids unconstitutional punishment, not unconstitutional conditions, so "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment").

Courts have held that the lack of sprinklers in prison cells, without more, fails to state a constitutional claim. See, e.g., Cutsinger v. Louisville Metro Dep't of Corr., No. 3:19-CV-P254-RGJ, 2019 WL 3255168, at *4 (W.D. Ky. July 19, 2019) (holding that the allegation that cells were unsafe because they lacked a fire sprinkler or evacuation plan was conclusory and failed to state an Eighth Amendment claim); Deas v. Ingham Cty. Jail, No. 1:18-cv-838, 2018 WL 3853521, at *4 (W.D. Mich. Aug, 14, 2018) (dismissing claim based on lack of sprinklers and stating that "[t]he presence of sprinklers in the cells and common areas might enhance safety in the jail; however, the absence of sprinklers does not make the jail inherently dangerous"); Mays v. Untig, No. 08-CV-3379, 2010 WL 398901, at *3 (D.N.J. Jan. 26, 2010) ("The absence of sprinklers

15

or fire drills, so long as the facility is in compliance with local fire code, does not amount to a viable claim.").

In response to his inmate request and grievance on this issue, officials told Jordan that the facility was in compliance with state and correctional standards.  Jordan fails to state a cognizable Eighth Amendment claim based on the lack of sprinklers in his RHU cell.  This claim is the only one asserted against the state fire marshal and fire protection sprinkler safety board defendants, and, therefore, those John and Jane Doe defendants are dismissed.

(c) Desks and Stools

Jordan alleges that the RHU cell should have been equipped with a desk and stool.  No court within this circuit has held that the lack of a desk and chair or stool is of constitutional dimension.  See Ennis v. Scully, No. 86 CIV. 4578(JFK), 1989 WL 153034, at *2 (S.D.N.Y. Dec. 11, 1989) ("While it would be helpful to plaintiffs in their educational pursuits to be provided with desks, the Court does not find that failure to provide desks violates any Constitutional right of plaintiffs....").

Other courts have consistently held that it does not.  See Hatchet v. Darby, No. CIV. A. DKC-13-0147, 2013 WL 490948, at *2

(D. Md. Feb. 7, 2013) (holding that failure to provide desk for each inmate was not deprivation of a life necessity but an inconvenience within purview of expected conditions in prison); Smith v. Does, No. 5:06-cv-00065, 2009 WL 305099, at *4-5 (S.D.W. Va. Feb. 6, 2009) (recognizing that complaints of inadequate space in 12-man cells and no desk and chair did not constitute Eighth Amendment violations); Luedtke v. Gudmanson, 971 F. Supp. 1263, 1270 (E.D. Wis. 1997) (stating that failure to provide a desk and chair in segregation cell does not constitute deprivation of minimal necessities to constitute Eighth Amendment violation).  Thus, as the lack of a desk and stool does not deprive Jordan of a life necessity, he fails to state a cognizable Eighth Amendment claim based on this allegation.

     (d)  Inmate Property

Jordan alleges that captain Watson refused to retrieve long underwear and a sweatshirt from his property and refused to permit him to have his legal materials in his cell, for the two weeks he was confined in the RHU.  He argues that captain Watson violated his rights under directive 6.14.

Directive 6.14 is the male property matrix which lists the property that may be retained in a cell by inmates in general

17

population, at various security levels.  The directive
specifically excludes restrictive confinement and provides that
the unit administrator of the facility housing inmates on
restrictive statuses shall develop a property matrix for each
status.  Directive 6.14 (excluding administrative segregation,
the security risk group program, special management and chronic
discipline).  See portal.ct.gov/DOC/AD/AD-Chapter-Six.

Jordan was housed in restrictive housing, not the general
population.  As Jordan fails to provide a copy of the property
matrix applicable to him, the court cannot determine that he was
denied any item to which he was entitled.  Further, the lack of
legal materials for two weeks is not the deprivation of a life's
necessity.  Thus, the denial of his legal materials cannot
support an Eighth Amendment claim.  With respect to Jordan's
allegations, in connection with the denial of his sweatshirt and
long underwear, the court considers this claim in the context of
its analysis of cell conditions.

(e) Cleanliness and Heat

Finally, Jordan contends that the cell was filthy and cold.
Courts have found unconstitutional conditions of confinement
where the duration of exposure to the conditions is sufficiently
long or the exposure is an ongoing condition of the inmate's

18

confinement, not where the exposure is the result of a single isolated incident.  See Hutto v. Finney, 437 U.S. 678, 686-87 (1978) ("A filthy overcrowded cell and a diet of grue might be tolerable for a few days and intolerably cruel for weeks or months.") (internal quotation marks omitted).  Jordan was exposed to the conditions for fourteen days, more than a few days, but less than months.

To establish a conditions of confinement claim, Jordan must allege facts showing that his confinement violated contemporary standards of decency, i.e., the defendants deprived him of a basic human need, such as food, clothing, shelter, medical care, and reasonable safety.  Helling v. McKinney, 509 U.S. 25, 35-36 (1993); see also Rhodes v. Chapman, 452 U.S. 337, 346 (1981).

Jordan alleges that the cell lacked functioning hot water, the ventilation system was clogged, he was provided minimal clothing and no extra blankets to address the cold, the cell was filthy with bodily waste, mold, rust, and chemical agent residue and he was denied cleaning supplies.  Jordan's allegations regarding the cleanliness of the cell implicate the need for sanitation and his claims regarding ventilation and temperature implicate the need for shelter.  Accordingly, the court will permit these claims, which lasted for more than a few days, to

proceed for further development of the record.  The claim will
proceed against captain Watson.  Jordan alleges that Watson was
directly involved in his supervision in the RHU cell.  The court
considers below Jordan's allegations regarding the supervisory
defendants, Quiros, Walker, Nunez, and Peterson.

## II.  <u>Equal Protection</u>

Jordan contends that he was denied equal protection of the
laws because other housing units have sprinklers in and outside
the cells, a desk and stool in the cell, adequately functioning
ventilation system, and no fungus, mold or contaminants.  In
addition, inmates in other units are afforded access to their
property in accordance with directive 6.10.

The Equal Protection Clause protects individuals from
invidious discrimination.  It does not mandate identical
treatment for each individual or group of individuals.  Instead,
it requires that similarly situated persons be treated the same.
See <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439-
40 (1985).  To state an equal protection claim, Jordan must
allege facts showing that he was treated differently from
similarly situated inmates and the difference in treatment was
based on "'impermissible considerations such as race, religion,
intent to inhibit or punish the exercise of constitutional

20

rights, or malicious bad faith intent to injure a person.'"
Diesel v. Town of Lewisburo, 232 F.3d 92, 103 (2d Cir. 2000)
(quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir.
1980)).

Alternatively, Jordan may base his equal protection claim
on allegations that he has been irrationally singled out as a
"class of one." Enquist v. Oregon Dep't of Agric., 553 U.S.
591, 601 (2008).  To state a class of one equal protection
claim, Jordan "must show 'an extremely high degree of similarity
between [himself] and the persons to whom [he] compare[s]
himself].'"  Ruston v. Town Bd. For Town of Skaneateles, 610
F.3d 55, 59 (2d Cir. 2010) (quoting Clubside, Inc. v. Valentin,
468 F.3d 144, 159 (2d Cir. 2006)); see also Progressive Credit
Union v. City of New York, 889 F.3d 40, 49 (2d. Cir. 2018)
(holding that the plaintiff's circumstances must be "prima facie
identical" to circumstances of the person he alleges received
irrationally different treatment).

Jordan alleges that his housing unit was treated
differently from general population housing units.  He alleges,
however, that he was housed in the RHU.  In response to his
complaints, he was told that some issues, such as the presence
of desks and stools and the limitation on property were based on

the fact that he was housed in the RHU.  As Jordan fails to identify any other RHU unit with different conditions, he fails show that he was treated differently from similarly situated inmates.  Thus, he fails to state an equal protection claim.

## III. **Involuntary Servitude**

Jordan contends that confining him under unconstitutional conditions for two weeks, while assessing the costs of incarceration against him, constitutes involuntary peonage in violation of the Thirteenth Amendment.

The Thirteenth Amendment states, in pertinent part, that "[n]either slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."  U.S. Const. amend. XIII, § 1. The Supreme Court has noted that "[w]hile the general spirit of the phrase 'involuntary servitude' is easily comprehended, the exact range of conditions it prohibits is harder to define." United States v. Kozminski, 487 U.S. 931, 942 (1988).  However, to state a Thirteenth Amendment claim, "a plaintiff must demonstrate that he has been subjected to compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results."  Ford v. Nassau Cty.

Executive, 41 F. Supp. 2d 392, 401 (E.D.N.Y. 1999) (quoting

Butler v. Perry, 240 U.S. 328, 332 (1916)).  In Ford, for

example, the court held that requiring a pretrial detainee to

choose between distributing food to other inmates without pay or

being confined in segregation did not violate the Thirteenth

Amendment.  Id. at 397-98.  See also Muhammaud v. Murphy, 632 F.

Supp. 2d 171, 176 (D. Conn. 2009) (requiring inmate to

participate in programs is not work and does not constitute

involuntary servitude).

     Jordan was not required to perform any tasks or participate

in any programs.  Thus, he has not alleged facts suggesting that

he was held in violation of the Thirteenth Amendment.  The

Thirteenth Amendment claim is dismissed pursuant to 28 U.S.C. §

1915A(b)(1).

**IV.  State Building Inspectors**

     Jordan includes as defendants building inspectors John and

Jane Doe.  In the description of the parties, Jordan states that

the state building inspectors are responsible for determining

whether buildings comply with codes and are habitable.  Jordan

alleges that they are responsible for his conditions of

confinement because they failed to inspect and condemn Cheshire.

     To state a cognizable section 1983 claim, Jordan must

23

allege facts showing the personal involvement of the defendants in the alleged constitutional violation.  Costello v. City of Burlington, 632 F.3d 41, 49 (2d Cir. 2011) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).  Thus, for the inspectors to have been deliberately indifferent to his health and safety, they must have been aware of and disregarded the risk of serious harm to Jordan.

Jordan bases his claim, not on something the inspector did, but on the fact that they did not inspect Cheshire.  He alleges only that he sent a letter to the office of the building inspector.  He alleges no facts indicating that either defendant read or even received the letter instead of the letter being handled by subordinates.  Thus, Jordan has not alleged facts showing that the inspectors were aware of the conditions in the RHU cell.  Jordan alleges, at most, that the inspectors were negligent.  As negligence is not cognizable under section 1983, the claims against inspectors John and Jane Doe are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).  See Poe v. Leonard, 282 F.3d 123, 145 (2d Cir. 2001) ("mere negligence is insufficient as a matter of law to state a claim under section 1983").

## V.   <u>Supervisory Liability</u>

Jordan names supervisory officials commissioner Quiros,

24

warden Walker, and deputy wardens Nunez and Peterson.  The
second circuit has recently clarified the standard to be applied
to a claim of supervisory liability.  See Tangreti v. Bachman,
983 F.3d 609 (2d Cir. 2020).  The court adopted the Supreme
Court's reasoning in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and
held that "after Iqbal, there is no special rule for supervisory
liability.  Instead, a plaintiff must plead and prove 'that each
Government-official defendant, through the official's own
individual actions, has violated the Constitution.'"  Tangreti,
983 F.3d at 618 (quoting Iqbal, 556 U.S. at 676).  Thus, Jordan
must allege facts showing that each defendant "personally knew
of and disregarded an excessive risk" to his health and safety.
Id. at 619 (citations and internal quotation marks omitted).

Jordan alleges only that he informed the defendants of his
issues through the "remedies process" but they did nothing.  The
fact that a supervisory official did not act in response to a
letter from an inmate is insufficient to establish that
official's personal involvement.  Delee v. Hannigan, 729 F.
App'x 25, 32 (2d Cir. 2018) (affirming dismissal of supervisory
liability claim based on failure to respond to letter).  Jordan
does not allege that the defendants, Quiros, Nunez, or Peterson,
ever responded to any inmate requests sent to them.  Thus, he

failed to allege facts showing their personal involvement in his claims.

Jordan's October 15, 2020 inmate request addressed to the defendants, Walker, Nunez, and Peterson, was referred to Cruz for response.  Referring a letter to a staff member who responds to the letter is insufficient to establish the personal involvement of the referring official.  Thus, the fact that only Cruz responded to the grievance addressed to three other officials does not show the officials' personal involvement. See Rodriguez v. Rock, No. 9:13-CV-01106(DNH/DEP), 2015 WL 5147045, at *6 (N.D.N.Y. Sept. 1, 2015) (holding that where a supervisor's only involvement is referral of correspondence to appropriate staff, supervisor has insufficient personal involvement to support a section 1983 claim) (citing cases).

However, warden Walker did respond to the November 10, 2020 grievance, which included a claim regarding cell cleanliness. Thus, the court will permit the conditions of confinement claim to proceed against warden Walker, as well as captain Watson.

## VI.  **Official Capacity Claims**

Jordan seeks damages from all of the defendants, but does not specify whether he seeks those damages in the defendants' individual or official capacities.

26

The Eleventh Amendment prohibits an award of damages against state officials in their official capacities, unless the state has waived that immunity or Congress has abrogated it. Kentucky v. Graham, 473 U.S. 159, 169 (1995).  Section 1983 does not abrogate state sovereign immunity.  Quern v. Jordan, 440 U.S. 332, 343 (1979).  Nor has Jordan alleged any facts suggesting that the state has waived immunity in this case. Thus, all claims for damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

Jordan requests declaratory relief in the form of a statement indicating that the conditions in the RHU cell were unconstitutional.

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationship."  Colabella v. American Inst. of Certified Pub. Accountants, No. 10-CV-2291(KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citation omitted).  As such, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." Orr v. Waterbury Police Dep't, No. 3:17-CV-788(VAB), 2018 WL

780218, at *7 (D. Conn. Feb. 8, 2018).  In <u>Orr</u>, the court
dismissed the request for declaratory judgment that the
defendants had violated the plaintiff's Fourth Amendment rights
during his arrest because the request "concern[ed] past
actions."  <u>Id.</u>  Here, Jordan seeks a declaration that the
defendants violated his constitutional rights by confining him
in the RHU cell for fourteen days in October 2020, a request
based on past actions.

In addition, "dismissal of a declaratory judgment action is
warranted where the declaratory relief plaintiff seeks is
duplicative of his other causes of action."  <u>Kuhns v. Ledger</u>,
202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (citation, alterations,
and ellipsis omitted).  Declaratory relief is not warranted on
the claims that have been dismissed and, if Jordan prevails on
his claim for unconstitutional conditions of confinement, a
judgment in his favor would serve the same purpose as a
declaration that the conditions were unconstitutional.  Thus,
Jordan's request for declaratory relief is not distinct from the
relief sought in his section 1983 claims and is dismissed.  <u>See,
e.g.</u>, <u>United States v. $2,350,000.00 in Lieu of One Parcel of
Property Located at 895 Lake Avenue, Greenwich, Connecticut</u>, 718
F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if

property is not forfeited, receiver-claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant).

## CONCLUSION

All claims against the defendants, building inspectors John and Jane Doe, state fire marshals John and Jane Doe, fire protection sprinkler system board chairmen John and Jane Doe, supervisory officials Quiros, and deputy wardens Nunez and Peterson; the conditions of confinement claims for confinement in behavior observation status for twenty-four hours, confinement in-cell restraints for five hours, lack of sprinklers, lack of desks and stools, and denial of property; the Fourteenth Amendment equal protection claim; the Thirteenth Amendment claim; the request for declaratory relief; and the requests for damages against the defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and (2).

The case will proceed on the conditions of confinement claims regarding cell ventilation/heat and cleanliness against defendants, Watson and Walker, in their individual and official capacities.

The Court enters the following orders:

29

(1)  **The clerk shall** verify the current work addresses for defendants Watson and Walker with the Department of Correction officer of Legal Affairs, mail a waiver of service of process request packet containing the complaint and this order to each defendant at the address provided within **twenty-one (21) days** of this order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing.  If either defendant fails to return a signed waiver form, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

(2)  **The clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint and this order on the defendants, Watson and Walker, in their official capacities, at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)  **The clerk shall** send Jordan a copy of this order.

(4)  **The clerk shall** send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)  The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6)  Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(7)  All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)  Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)  If the plaintiff changes his address at any time

during the litigation of this case, local court rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on the defendants' counsel by regular mail.

(11) The clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to plaintiff.

32

**SO ORDERED** this 22nd day of March 2021 at Hartford,

Connecticut.

_____/s/_____
Alfred V. Covello
United States District Judge